UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-14419-RAR

JOSE GARCIA,

    Petitioner,

v.

ENZA ABBATE,

    Respondent.
_____/

## ORDER DENYING 28 U.S.C. § 2254 HABEAS PETITION

**THIS CAUSE** comes before the Court on a *pro se* Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254,[1] in which Petitioner challenges his civil commitment in the custody of the Florida Department of Children and Families ("DCF") after he was found not guilty by reason of insanity by the Nineteenth Judicial Circuit Court in and for St. Lucie County, Florida, in Case No. 2007-CF-000576. *See* Petition [ECF No. 1] ("Pet."). Respondent filed a Response to the Petition. *See* Response to Order to Show Cause [ECF No. 11] ("Resp.").

Having carefully reviewed the record and governing law, and for the reasons set forth below, the Court **DENIES** the Petition in its entirety.

## PROCEDURAL HISTORY

On February 26, 2007, Petitioner was charged by Information with battery evidencing prejudice based on the victim's mental or physical disability (Count 1) and with elderly or disabled

---

[1] The Court initially determined that 28 U.S.C. § 2241, not § 2254, applied to this action since it appeared "that the state court found [Petitioner] incompetent to stand trial and that he was committed with the hope of being restored to competency." Order Requiring Filing Fee, [ECF No. 4], at 1 n.1. With the benefit of the full state-court record, the Court is now aware that Petitioner was civilly committed after the state court adjudicated him not guilty by reason of insanity in the underlying criminal case. Accordingly, the Court modifies its original finding and agrees with both parties that this Petition was properly brought under § 2254. *See Duncan v. Walker*, 533 U.S. 167, 176 (2001) ("[F]ederal habeas corpus review may be available [under § 2254] to challenge the legality of a state court order of civil commitment or a state court order of civil contempt."); *Francois v. Henderson*, 850 F.2d 231, 232–33 (5th Cir. 1988) (applying § 2254 to petitioner who was civilly committed after being found not guilty by reason of insanity).

adult abuse (Count 2).  *See* Information, [ECF No. 12-1], at 2.  Shortly after being charged, Petitioner's trial counsel filed a "Motion for Examination of Defendant" pursuant to FLA. R. CRIM. P. 3.210, arguing that she had "reasonable grounds to believe that the Defendant is incompetent to proceed."  Motion for Examination, [ECF No. 12-1], at 4.  The trial court granted the motion, appointed an expert, and ultimately committed Petitioner to DCF after two experts concluded that Petitioner was incompetent to proceed.  *See* Order Appointing Expert, [ECF No. 12-1], at 6–8; Order Adjudging Defendant Incompetent to Proceed, [ECF No. 12-1], at 10–12.  On March 11, 2008, the state court released Petitioner from DCF custody after he agreed to comply with certain conditions upon release.  *See* Order Allowing Defendant to be Released ROR With Mental Health Court Conditions, [ECF No. 12-1], at 16–17.

On March 25, 2008, the state trial court adjudicated Petitioner not guilty by reason of insanity.  *See* Order Adjudging Defendant Not Guilty by Reason of Insanity, [ECF No. 12-1], at 19.  Although the court found that Petitioner had been restored to competence on December 10, 2007, it adopted the written reports of two experts who concluded that Petitioner was "insane at the time of the alleged offense."  *Id.*  The court further explained that Petitioner "does not meet the criteria for commitment to a treatment facility of [DCF] as provided in section 916.15(1), Fla. Stat. (2007), but is in need of mental health treatment and community placement."  *Id.* at 20.  Accordingly, the court placed Petitioner on "conditional release" under Fla. Stat. § 916.17, and required Petitioner to "take any psychotropic medications prescribed by his treating physician" and "participate in the St. Lucie County Mental Health Court and appear for all Court hearings as noticed."  *Id.*

On May 20, 2008, the state trial court issued a bench warrant for Petitioner's arrest after he failed to appear in court as directed.  *See* Bench Warrant, [ECF No. 12-1], at 23.  Defense counsel quickly moved for the appointment of a mental health expert, stating that Petitioner

"refuses to take psychotropic medication as prescribed by his treating physician" and that Petitioner might "meet[ ] the criteria for involuntary treatment." Motion to Appoint Mental Health Expert, [ECF No. 12-1], at 25. The trial court granted the motion, revoked Petitioner's conditional release, and ordered Petitioner to be committed to DCF custody. *See* Order of Revocation of Conditional Release, [ECF No. 12-1], at 29–31. On March 10, 2010, the trial court concluded that Petitioner "continues to meet [the] criteria for involuntary hospitalization pursuant to Florida Statute 916.13(1) [and] [FLA. R. CRIM. P.] 3.212" and ordered Petitioner to remain in the custody of the DCF until further order of the court. Order of Involuntary Recommitment, [ECF No. 12-1], at 41. Petitioner has remained in DCF custody since then, with the state trial court most recently reaffirming that Petitioner should remain civilly committed on August 8, 2023. *See* Order of Involuntary Recommitment, [ECF No. 12-1], at 43.[2] The instant Petition was filed on December 19, 2023. *See* Pet. at 15.[3]

## STANDARD OF REVIEW

"As amended by [the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")], 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Some of the more restrictive limits are found in § 2254(d). Under that provision, a federal court may grant habeas relief from a state court judgment only if the state court's decision on the merits was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) was based on an unreasonable

---

[2] A review of Petitioner's state court docket confirms that Petitioner's competence has been reviewed every year since 2010, and the state trial court has consistently found that Petitioner still meets the statutory criteria for involuntary commitment. *See* State Court Docket, [ECF No. 12-1], at 33–39.

[3] "Under the 'prison mailbox rule,' a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009). "Absent evidence to the contrary, [courts] assume that a prisoner delivered a filing to prison authorities on the date that he signed it." *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014).

determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Consequently, § 2254(d) constructs a "highly deferential standard for evaluating state-court rulings" because, after all, this standard "demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

"A state court's decision is 'contrary to' federal law if the 'state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Consalvo v. Sec'y, Fla. Dep't of Corr.*, 664 F.3d 842, 844 (11th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)) (brackets omitted). A state court's decision qualifies as "an unreasonable application of federal law if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (quoting *Williams*, 529 U.S. at 413) (cleaned up). "'If this standard [seems] difficult to meet'—and it is—'that is because it was meant to be.'" *Burt v. Titlow*, 571 U.S. 12, 20 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

By its own plain terms, § 2254(d)'s deferential standard applies only when a claim "was adjudicated on the merits in State court proceedings[.]" 28 U.S.C. § 2254(d); *see also Cullen*, 563 U.S. at 181 ("If an application includes a claim that has been adjudicated on the merits in State court proceedings, § 2254(d), an additional restriction applies."); *Cone v. Bell*, 556 U.S. 449, 472 (2009) ("Because the Tennessee courts did not reach the merits of Cone's *Brady* claim, federal habeas review is not subject to the deferential standard that applies under AEDPA."). The summary denial of a claim with no articulated reasons presumptively serves as an adjudication on the merits subjecting the claim to § 2254(d)'s additional restrictions. *See Richter*, 562 U.S. at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"). This is because

federal courts ordinarily presume § 2254(d)'s deferential standard applies when a constitutional claim has been presented to a state court and denied in that forum. *See, e.g.*, *id.* at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

At the same time, "federal court[s] should 'look through' [an] unexplained decision to the last related state-court decision that *does* provide a relevant rationale" if one exists. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (emphasis added). From there, federal courts "presume that the unexplained decision adopted the same reasoning." *Id.* "[T]he State may rebut [that] presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." *Id.*

In addition to the standard of review imposed by AEDPA, the petitioner must also show that any constitutional error had a "substantial and injurious effect or influence" on the verdict to be entitled to habeas relief. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The Supreme Court has explained that, while the passage of AEDPA "announced certain new conditions to [habeas] relief," it did not supersede or replace the harmless error standard announced in *Brecht*. *Brown v. Davenport*, 596 U.S. 118, 134 (2022). In other words, a habeas petitioner must <u>also</u> satisfy *Brecht*, even if AEDPA applies. *See id.* ("[A] federal court must *deny* relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA. But to *grant* relief, a court must find that the petition has cleared both tests.") (emphasis in original); *see also Mansfield v. Sec'y, Dep't of Corr.*, 679 F.3d 1301, 1307 (11th Cir. 2012) ("[A] habeas petition cannot be successful unless it satisfies both [AEDPA] and *Brecht*.").

## ANALYSIS

Petitioner raises four grounds for relief in his Petition: (1) the "original psyche evaluation in 2008 did not cite a mental illness but I was committed for 15 years on a charge that if proven would only carry 5 years," Pet. at 5; (2) the crimes Petitioner was arrested for "seemed to be a misdemeanor" since they were originally labeled misdemeanors on the arrest affidavit, *id.* at 7; (3) Petitioner "no longer meet[s] the criteria for commitment," *id.* at 9; and (4) an unidentified judge "wouldn't discuss [the] case" and left the case open "in perpetuity" without providing "termination objections," *id.* at 10. In addition to arguing that all four grounds for relief fail on their merits, Respondent contends that Grounds 1 and 2 are untimely and that all four grounds for relief are both "not cognizable because they raise only state law issues" and unexhausted because "Petitioner never presented the State courts with a federal aspect to his claims." Resp. at 11–12. Although Respondent's procedural arguments are compelling and most likely correct, the Court instead elects to reach the merits of the Petition since each of Petitioner's claims can easily be denied, even under a *de novo* standard of review. *See Dallas v. Warden*, 964 F.3d 1285, 1307 (11th Cir. 2020) ("[A] federal court may skip over the procedural default analysis if a claim would fail on the merits in any event.").

### A. Ground One

The Court finds that Ground One is made up of two separate subclaims. First, Petitioner seems to allege that Chapter 916 of the Florida Statutes does not apply to him because "the original psyche evaluation in 2008 did not cite a mental illness[.]" Pet. at 5. Second, Petitioner challenges the length of his civil commitment, arguing that he was "committed for 15 years on a charge that if proven would only carry 5 years." *Id.* Respondent counters that Petitioner has received "multiple diagnoses and treatment" since 2007 and that Petitioner "can remain involuntarily

committed for as long as he or she meets the criteria for involuntary commitment." Resp. at 13–14.

Under Florida law, a criminal defendant can be found not guilty by reason of insanity if, "at the time of the crime, the defendant was incapable of distinguishing between right and wrong as a result of a mental disease or defect." *Reaves v. State*, 826 So. 2d 932, 938 (Fla. 2002). However, any "defendant who is acquitted of criminal charges because of a finding of not guilty by reason of insanity may be involuntarily committed" if he or she "meet[s] the criteria for involuntary commitment and [is] treated in accordance with the provisions of this section and the applicable Florida Rules of Criminal Procedure." Fla. Stat. §§ 916.15(2), (3)(a). For a defendant to be involuntarily committed in a way that comports with both Florida law and due process, the state court must specifically find that "the defendant has a mental illness and, because of the illness, is manifestly dangerous to himself or herself or others." *Id.* § 916.15(2); *see also Addington v. Texas*, 441 U.S. 418, 429 (1979) (holding that a state may voluntarily commit a person if they are "both mentally ill and likely to be dangerous").

Contrary to Petitioner's argument that "the original psyche evaluation in 2008 did not cite a mental illness," the state court plainly complied with § 916.15 by adopting specific findings that Petitioner was afflicted with a mental illness and that this illness caused him to be dangerous to others before committing him to DCF. Prior to being placed on conditional release on March 11, 2008, an expert psychologist diagnosed Petitioner with schizophrenia but was able to restore Petitioner to competency with a regimen of pharmaceuticals. *See* September 15, 2023 Report, [ECF No. 14-1], at 4. Since then, several experts have consistently opined that—if Petitioner does not take his medication—he demonstrates symptoms of psychosis and is a threat to others. *See id.* at 4–6. While on conditional release, Petitioner "refuse[d] to take [the] psychotropic medication as prescribed by his treating physician" and did not attend court proceedings as required. Motion

to Appoint Mental Health Expert, [ECF No. 12-1], at 25.  When the state trial court revoked Petitioner's conditional release and committed Petitioner to the custody of DCF on June 17, 2008, it adopted the previous psychological reports which found that: (1) Petitioner had a mental illness (schizophrenia), and (2) because Petitioner was refusing to take his medication, he was a threat to others.  *See* Order of Revocation of Conditional Release, [ECF No. 12-1], at 29–31.  Since the trial court relied on written reports establishing that Petitioner "is mentally ill, and is a danger to himself or others[,]" it complied with Florida law and due process requirements when it committed Petitioner to DCF custody in 2008.  *Tavares v. State*, 871 So. 2d 974, 976 (Fla. 5th DCA 2004) (citing *Addington*, 441 U.S. at 429).

Petitioner's second subclaim fares no better.  Petitioner alleges that his 15-year involuntary commitment is presumptively illegal because he was originally charged with two third-degree felonies—battery evidencing prejudice and elderly or disabled adult abuse[4]—that each carry a maximum sentence of five years in prison.  *See* Fla. Stat. § 775.082(3)(d) (2007) ("For felony of the third degree, by a term of imprisonment not exceeding 5 years.").  In short, Petitioner says that it is illegal for his involuntary commitment to last longer than the maximum prison sentence he could have received had he been adjudicated guilty.  Unfortunately for Petitioner, this precise argument has been squarely rejected by the Supreme Court.  In *Jones v. United States*, 463 U.S. 354 (1983), the Court held that the purpose of involuntary commitment "is to treat the individual's mental illness and protect him and society from his potential dangerousness.  The committed acquittee is entitled to release <u>when he has recovered his sanity or is no longer dangerous</u>."  *Id.* at 368 (emphasis added).   Criminal sentences, on the other hand, are based on "different

---

[4] *See* Fla. Stat. § 784.03(1)(b) (2007) ("[A] person who commits battery commits a misdemeanor of the first degree[.]"); Fla. Stat. § 775.085(1)(a) (2007) (explaining that, when "the commission of a [first-degree misdemeanor] evidences prejudice" based on a protected class, then it is "reclassified to a felony of the third degree"); Fla. Stat. § 825.102(1) (2007) ("A person who knowingly or willfully abuses an elderly person or disabled adult without causing great bodily harm . . . commits a felony of the third degree[.]").

considerations" such as "retribution, deterrence, and rehabilitation." *Id.* at 369. Since there is "no necessary correlation between [the] severity of the offense and length of time necessary for recovery[,] [t]he length of the acquittee's hypothetical criminal sentence . . . is irrelevant to the purposes of confinement." *Id.*; *see also Williams v. Wallis*, 734 F.2d 1434, 1439 (11th Cir. 1984) ("[A]n acquittee may be automatically committed for an <u>indefinite period of time</u> after he has proved at his criminal trial by a preponderance of the evidence that mental illness caused his criminal act." (emphasis added)).

The record is clear that Petitioner has a mental illness and presents a danger to others. The state court did not violate the Constitution by ordering Petitioner to be committed to DCF until he is no longer a danger, even if that commitment lasts longer than a hypothetical statutory maximum sentence. The Court thus **DENIES** Ground One.

### B. *Ground Two*

In Ground Two of his Petition, Petitioner asserts that the crimes he was originally arrested for were "marked misdemeanor" on his arrest affidavit and were improperly enhanced to felonies when the Information was filed. Pet. at 7; *see also* Arrest Affidavit, [ECF No. 12-1], at 83. Petitioner also repeats a similar refrain from Ground One by arguing that a misdemeanor "doesn't qualify for 15 years forensic commitment under [Fla. Stat. § 916.15]." Pet. at 7. These arguments are meritless. An arrest affidavit is not a charging document, so the state attorney's normally unfettered discretion in charging a criminal defendant is not constrained by an initial determination made by a (non-lawyer) police officer. *See Tucker v. State*, 987 So. 2d 717, 721 (Fla. 5th DCA 2008) ("Ordinarily, 'arrest' and 'prosecution' refer to different stages in the criminal justice process. 'Prosecution' generally refers to the formal pressing of criminal charges by a prosecuting authority. In Florida, the prosecuting authority is the state attorney, who has the complete discretion to initiate, continue or terminate a 'prosecution.'" (citing *State v. Bloom*, 497 So. 2d 2,

3 (Fla. 1986))). More importantly, as the Supreme Court explained in *Jones* (and as this Court explained when it denied Ground One), the "severity of the offense . . . is irrelevant to the purposes of confinement." 463 U.S. at 369. Petitioner can remain involuntarily committed for an indefinite period of time so long as there is evidence that he has a mental illness and that his mental illness makes him a danger to the community. *See id.* at 368; *Wallace*, 734 F.2d at 1439. Ground Two is thus **DENIED**.

### C. Ground Three

Petitioner argues in Ground Three that he "no longer meet[s] [the] criteria for commitment." Pet. at 9. The record does not support this. The state court most recently found that Petitioner "continues to meet [the] criteria for involuntary hospitalization" on August 8, 2023. *See* Order of Involuntary Recommitment, [ECF No. 12-1], at 41. The court relied on two forensic evaluations: a February 14, 2023 Report authored by Dr. Elizabeth Hooper, which recommended that Petitioner remain committed, *see* February 14, 2023 Report, [ECF No. 14-3], at 1–12; and a April 19, 2023 Report authored by Dr. Theodore Williams, which found that Petitioner no longer met "the legal criteria for continued involuntary commitment," April 19, 2023 Report, [ECF No. 14-2], at 5. After weighing the competing expert reports, the state court adopted the February 14, 2023 Report and extended Petitioner's commitment for another year. *See* Order of Involuntary Recommitment, [ECF No. 12-1], at 41.

Whether a defendant meets the involuntary commitment standard under Fla. Stat. § 916.15 is a finding of fact. *See Mannarelli v. State*, 767 So. 2d 480, 481 (Fla. 4th DCA 2000). Thus, Petitioner is not entitled to relief on Ground Three unless he can rebut the "presumption of correctness" a federal court applies to state court factual findings with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1035 (11th Cir. 2022) (en banc) ("[A] state court's factual determinations are presumed to be

correct, and the petitioner has the burden of proving otherwise by clear and convincing evidence." (internal quotations omitted)).  Petitioner provides no evidence—let alone clear and convincing evidence—that the state court wrongly found that he qualified for involuntary commitment under § 916.15.  *See generally* Pet.  On the contrary, Petitioner's most recent evaluation still concluded that Petitioner "continues to meet criteria for involuntary hospitalization," even if it recommended that he be placed in a "less restrictive setting, such as a civil hospital."  September 15, 2023 Report, [ECF No. 14-1], at 11.  Since there is overwhelming evidence that Petitioner still meets the criteria for involuntary commitment—and given that Petitioner has not even attempted to rebut this evidence—Ground Three is thus **DENIED**.[5]

### D. Ground Four

Ground Four is the most cryptic claim.  Here is what Petitioner alleges in Ground Four in its entirety:

> In one appeal the Judge said he wanted me to get well but no reason cited.  Wouldn't discuss case.  Case open in perpetuity under FS 916 with no termination objectives given under the statute.

Pet. at 10.  Petitioner is obliged to "state the facts supporting each ground" for relief in his § 2254 petition, and the Court can dismiss a claim that does not meet these "heightened pleading requirements."  *Borden v. Allen*, 646 F.3d 785, 810 (11th Cir. 2011).  The Court will do its best to decipher "this vague and conclusory claim," but it will not "bend over backwards to figure out every possible argument" Petitioner could be making here.  *Catoggio v. United States*, No. 23-CV-

---

[5] The Court also rejects any argument that there is insufficient evidence to establish that Petitioner meets the statutory criteria for involuntary civil commitment.  To show that there is insufficient evidence to sustain an involuntary civil commitment, Petitioner must satisfy the test set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), which requires Petitioner to show that "no rational trier of fact would have found proof beyond a reasonable doubt."  *Freeze v. Sec'y, Dep't of Child. & Fam.*, No. 08-CV-2045, 2011 WL 3156714, at *5 (M.D. Fla. July 26, 2011).  There is ample evidence, including dozens of expert reports dating back to 2007, showing Petitioner has a serious mental illness and that his refusal to take his medication makes him a danger to others.  *See* September 15, 2023 Report, [ECF No. 14-1], at 4–6.  That is more than enough to meet *Jackson*'s sufficiency of the evidence standard.

60910, 2023 WL 4156692, at *3 n.1 (S.D. Fla. June 23, 2023).  In any event, the Court finds that Petitioner is making three distinct arguments in Ground Four: (1) the state court gave "no reason" for committing him; (2) the presiding judge "wouldn't discuss" Petitioner's case; and (3) his involuntary commitment is continuing "in perpetuity" without being given "termination objectives."  All of these claims are meritless.

*First*, although the state court's most recent "Order of Involuntary Commitment" did not contain any detailed factual findings, the court considered and expressly adopted the February 14, 2023 Report and the April 19, 2023 Report—both of which exhaustively discussed Petitioner's mental health history, his present dangerousness, and his treatment—into its analysis.  *See* Order of Involuntary Recommitment, [ECF No. 12-1], at 41.  As this Court has repeated several times now, there is ample evidence in the record showing that Petitioner meets the criteria for involuntary civil commitment under Fla. Stat. § 916.15.

*Second*, there is no evidence that the state trial court refused to "discuss" Petitioner's case.  On the contrary, the record of Petitioner's most recent hearing in state court shows that Petitioner appeared by video conference and that he was represented by an attorney who made arguments on his behalf.  *See id.* at 41 (stating that the trial court considered the "argument of counsel"); Court Minutes, [ECF No. 12-1], at 85 (reflecting Petitioner and defense counsel's appearances at the hearing).

*Third*, Petitioner is not being held "in perpetuity."  While mentally ill persons who are a danger to themselves or others may be involuntarily committed, the Due Process Clause of the Constitution still requires the state to periodically "consider the propriety of ongoing commitment" and to release a detainee "if the criteria for commitment are no longer met."  *J.R. v. Hansen*, 803 F.3d 1315, 1323–24 (11th Cir. 2015).  The state court here has dutifully reviewed the propriety of Petitioner's commitment every year for the past fifteen years.  *See* State Court Docket, [ECF No.

12-1], at 33–39. Each time, the state court considered the forensic reports of experts who attested to Petitioner's dangerousness—mainly stemming from Petitioner's refusal to take medication that would suppress the symptoms of his psychosis. *See* September 15, 2023 Report, [ECF No. 14-1], at 4–6.[6] Petitioner's commitment is reviewed every year "by someone with the duty to consider and the authority to order release when appropriate" and that is all the Constitution requires. *Hansen*, 803 F.3d at 1326. Until the state court has reason to believe that Petitioner "has recovered his sanity or is no longer dangerous," he can remain involuntarily committed in the custody of DCF. *Jones*, 463 U.S. at 368.

Since Petitioner fails to identify any constitutional errors, the Court will **DENY** Ground Four.

## EVIDENTIARY HEARING

No evidentiary hearing is warranted in this matter. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the [state court] record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

## CERTIFICATE OF APPEALABILITY

After careful consideration of the record in this case, the Court declines to issue a certificate of appealability ("COA"). A habeas petitioner has no absolute entitlement to appeal a district court's final order denying his habeas petition. Rather, to pursue an appeal, a petitioner must obtain a COA. *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009).

Issuance of a COA is appropriate only if a litigant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To do so, litigants must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable

---

[6] The Court notes that Petitioner's most recent forensic report has recommended that Petitioner be placed in a civilian hospital and expresses optimism that additional progress will be made towards his release if he "maintain[s] compliance with his current medication regimen[.]" *Id.* at 11.

or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). And "[w]here a district court has disposed of claims . . . on procedural grounds, a COA will be granted only if the court concludes that 'jurists of reason' would find it debatable both 'whether the petition states a valid claim of the denial of a constitutional right' and 'whether the district court was correct in its procedural ruling.'" *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001) (quoting *Franklin v. Hightower*, 215 F.3d 1196, 1199 (11th Cir. 2000)).

Here, reasonable jurists would not debate the Court's decision to deny the Petition on its merits. Accordingly, a COA will **NOT ISSUE**.

### CONCLUSION

Having carefully reviewed the record and governing law, it is hereby

**ORDERED AND ADJUDGED** that the Petition [ECF No. 1] is **DENIED**. Any request for a certificate of appealability is **DENIED**, and an evidentiary hearing is **DENIED**. All deadlines are **TERMINATED**, and any pending motions are **DENIED** as moot. The Clerk is directed to **CLOSE** the case.

**DONE AND ORDERED** in Miami, Florida, this 9th day of February, 2024.

_____
**RODOLFO A. RUIZ II
UNITED STATES DISTRICT JUDGE**